IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>WEI ZHU,<br><br>    Defendant.<br> / | No. CR 03-0348 WHA<br><br>**ORDER DENYING PETITION FOR WRIT OF ERROR CORAM NOBIS** |

**INTRODUCTION**

In this criminal case, the offender pled guilty to conspiring to possess device-making equipment in 2004. He was sentenced to three years of probation with no time in custody. Now, the offender petitions to expunge his conviction via a writ of error coram nobis. For the reasons stated below, the offender's petition is **DENIED**.

**STATEMENT**

In 2004, offender Wei Zhu, a Chinese citizen, pled guilty to conspiring to possess access device-making equipment, in violation of 18 U.S.C. 1029(b)(2). Zhu admitted that he, along with others, stole credit card information from patrons of a restaurant using a device known as a skimmer, resulting in the theft of approximately $177,000. After his arrest, Zhu cooperated with the government and accepted responsibility for his crime. Thus, at sentencing, the government recommended that he receive no prison time and the parties agreed on a restitution amount of $30,000. In September 2004, Zhu was sentenced to three years of probation, a

special assessment of $100, and ordered to pay $30,000 in restitution, which has been paid in full (Gov't Exhs. A, B, E). His two co-defendants received the same sentence of three years probation and were each ordered to pay $30,000 in restitution.

Zhu is a Chinese citizen who first came to the United States in 1995. Under 8 U.S.C. 1101(a)(43)(M), Zhu's conviction is considered an "aggravated felony" because it involved fraud or deceit in which the restitution amount exceeded $10,000. Zhu is not a United States citizen (he is a citizen of China), and thus he is subject to removal proceedings. After leaving the United States at some unknown point, Zhu tried to re-enter in 2013, at which time removal proceedings were initiated against him, and he is evidently still in this country.

Now, Zhu seeks to expunge his conviction through a writ of error coram nobis, on the basis of ineffective assistance of counsel. Essentially, Zhu avers that his defense counsel in 2004, Attorney Christopher Cannon, failed to adequately explain the immigration consequences of his guilty plea. Zhu contends that had he known the true immigration consequences, he would not have pled guilty pursuant to the plea agreement. This order follows full briefing. Zhu has not requested an evidentiary hearing.

**ANALYSIS**

"The writ of coram nobis affords a remedy to attack a conviction when the petitioner has served his sentence and is no longer in custody." *Estate of McKinney v. United States*, 71 F.3d 779, 781 (9th Cir. 1995). "Both the Supreme Court and we have long made clear that the writ of error coram nobis is a highly unusual remedy, available only to correct grave injustices in a narrow range of cases where no more conventional remedy is applicable." *United States v. Riedl*, 496 F.3d 1003, 1005 (9th Cir. 2007) (citing *United States v. Morgan*, 346, U.S. 502, 511 (1954)). To qualify for coram nobis relief, a defendant must establish four elements: "(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character." *United States v. McClelland*, 941 F.2d 999, 1002 (9th Cir. 1991) (citation omitted).

2

Zhu's petition fails because he has not demonstrated that any error committed amounted to one of the most fundamental character. To do so, he must establish that he received ineffective assistance of counsel. To do that, Zhu must prove both that his counsel's performance fell below an objective standard of reasonableness, and that the deficiency in his counsel's performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Based on a close review of the evidentiary record presented with the petition, this order finds that Zhu has not shown either deficient performance or prejudice.

In *Padilla v. Kentucky*, 559 U.S. 356 (2010), the Supreme Court held that criminal defense attorneys must advise noncitizen clients about the deportation risks of pleading guilty.[1] A subsequent Supreme Court decision, however, held that *Padilla's* holding is not retroactive, meaning "defendants whose convictions became final prior to *Padilla* therefore cannot benefit from its holding." *Chaidez v. United States*, 568 U.S. ___ (2013).

Thus, both sides concede that Zhu's petition must be governed under the law as it existed prior to *Padilla*. Before *Padilla*, "an attorney's failure to advise a client of the immigration consequences of a conviction, without more, [did] not constitute ineffective assistance of counsel under *Strickland*." *United States v. Kwan*, 407 F.3d 1005, 1015 (9th Cir. 2005). Rather, to be unconstitutionally ineffective, counsel must have made affirmative misrepresentations regarding the immigration consequences of pleading guilty and purported to have the requisite expertise to advise the defendant on such matters. *Id*. at 1015–16.

Here, the only evidence potentially pointing to deficient performance is Zhu's self-serving declaration. In it, Zhu states (Zhu Decl. at 2):

> At some point before I pleaded guilty I told [defense counsel Christopher] Cannon that I was not a U.S. citizen and that I was concerned about immigration consequences should I plead guilty pursuant to the plea agreement. In response, I understood Mr. Cannon to tell me that if I got probation in this matter and if I was not ever arrested for any new crimes my chances for being deported were very low.

---

[1] In about 2004, the undersigned judge anticipated *Padilla* and began advising aliens of the risk of deportation, but cannot now recall whether that occurred in this case. The reporter's notes have been discarded under our rules, so a transcript cannot be made.

3

The reader will please note Zhu's phrase "if I was not ever arrested for any new crimes." As shown below, and contrary to his declaration, Zhu *was* subsequently arrested, indeed convicted, for new crimes. He is in no position to complain about any advice he received. However, we are getting ahead of the story.

Zhu's former defense counsel, Attorney Christopher Cannon, also submitted a declaration, asserting that he remembers almost nothing from Zhu's case and does not recall any conversations about immigration consequences. Attorney Cannon also states that he assumed immigration consequences would have been addressed during Zhu's plea colloquy. The court reporter's notes from that hearing, however, have been destroyed, as they were more than ten years old, and thus no transcript can now be made.[2] Had Zhu filed the instant petition when his immigration problems began in 2013, a transcript of his plea hearing would have been available.     Zhu's declaration, on its own, is insufficient to overcome the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Our court of appeals has repeatedly viewed petitioners' self-serving declarations with skepticism. *See, e.g., Dows v. Wood*, 211 F.3d 480, 486 (9th Cir. 2000); *Harris v. Vasquez*, 949 F.2d 1497, 1525 (9th Cir. 1990). Moreover, "[i]f a defendant could throw into doubt the validity of a prior conviction by merely filing a self-serving document alleging that it was unconstitutionally obtained, then the burden would in effect be the government's to establish the validity of all prior . . . convictions. This might very well create judicial chaos." *Cuppett v. Duckworth*, 8 F.3d 1132, 1140–41 (7th Cir. 1993)(en banc).

As stated, Zhu must prove that his attorney did not merely refrain from advising him regarding the immigration consequences of conviction, but, instead, responded to Zhu's specific inquiries regarding immigration consequences with an affirmative misrepresentation *and* purported to have the requisite expertise to advise on such matters. *Kwan*, 407 F.3d at 1015.

---

[2] Pursuant to 28 U.S.C. 753(b) and Northern District of California General Order 23, the Clerk is required to collect the court reporter's shorthand notes and "preserve them in the public records of the court for not less than ten years." Defense counsel's declaration states that they contacted Debra Campbell, our district's Court Reporter Supervisor, but she informed defense counsel that the court reporter notes from the hearing had been destroyed, it having been more than ten years (Defense Exh. G).

Zhu's vague declaration, in which he says that he merely "understood" defense counsel to tell him that if he got probation the chances of deportation were low so long as he sustained no more arrests, does not rise to the level of being an affirmative misrepresentation in response to a specific inquiry. Moreover, nowhere does Zhu's declaration state that Attorney Cannon purported to have the requisite expertise to advise on such matters. Zhu's declaration fails to make a prima facie showing of ineffective assistance of counsel.

Worse than that, Zhu is a liar or, at the very least, totally lacking any credibility in this entire manner. In his declaration, Zhu states, "I did receive probation in this matter, and I have not been arrested for any other crimes since that case" (Zhu Decl. at 3). This statement is false. In February 2005, Zhu was arrested in Oakland for violating California Penal Code § 647(i), commonly known as California's "Peeping Tom" law. Zhu admitted that he trespassed onto private property and peered through someone else's window because he "saw women's (sic) undergarments hanging on a clothes line. . . . He stated that he would have liked to see a naked lady, and later conceded that he may have a peeping problem. He stated that he has peered through stranger's [sic] windows on at least ten occasions in the past" (Gov't Exh. G at 2). *Zhu pled no contest and was sentenced to fifteen days in custody*. In April 2012, he was arrested in Pleasant Hill for the same crime (Gov't Exh. H at 3-4). How could he conveniently forget all of this?

Zhu's subsequent arrests (and conviction) also demonstrate a lack of prejudice, inasmuch as he failed to even meet the conditions set forth in the supposed legal advice he now complains about. Under *Strickland*, the determinative question regarding prejudice is whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. As noted above, Zhu's declaration states: "I understood Mr. Cannon to tell me that if I got probation in this matter and *if I was not ever arrested for any new crimes* my chances for being deported were very low" (emphasis added). Thus, even taking Zhu's declaration at face value (which this order otherwise does not), Zhu cannot demonstrate prejudice because he cannot even show that he actually followed his attorney's

5

allegedly defective advice. No doubt, this major snafu is why he conveniently forgot about his Peeping Tom career.

Zhu was lucky, after having stolen approximately $177,000, to have gotten a reduction down to $30,000 in restitution. The deal that Attorney Cannon negotiated for Zhu was so sweet that there is no plausible way Zhu would have turned it down even had he known of potential deportation. Although the judge cannot remember the details of the plea colloquy, the judge remembers the sentencing and remembers questioning (to himself) at the time whether mere probation was too lenient, even with cooperation. Zhu received an excellent deal by avoiding prison time all together.

Zhu's petition largely relies on our court of appeals' decision in *Kwan*, 407 F.3d at 1014–19. In *Kwan*, the offender pled guilty to bank fraud and agreed to a sentence of one year and one day, in reliance on his attorney's affirmative representation that his guilty plea would not have adverse immigration consequences and his attorney's assurance that he had the requisite expertise to advise on such matters. Specifically, *Kwan* found that "counsel represented himself as having expertise on the immigration consequences of criminal convictions" and "assured Kwan that this advice was based on his knowledge and experience." *Id*. at 1008, 1016. In fact, because Kwan had received a sentence of greater than one year in custody, he had committed an aggravated felony and the chances of deportation were high. Our court of appeals granted Kwan's petition for a writ of error coram nobis, concluding that defense counsel's performance had been unconstitutionally deficient and that this deficiency actually prejudiced Kwan.

Our case is distinguishable from *Kwan*. As an initial matter, *Kwan* must now be read in light of the fact that the Supreme Court's decision in *Padilla* is not retroactive. *Kwan* itself, moreover, held that a failure to advise of potential immigration consequences was of no moment and ineffective assistance required that the lawyer make affirmative misrepresentations regarding immigration consequences *and* hold himself out as an expert on such matters. The record in *Kwan*, to underscore those points, demonstrated that defense counsel made affirmative misrepresentations about the immigration consequences of a guilty plea and also purported to

6

have the requisite expertise to advise on such matters. Here, the record does not show that Zhu's attorney either made affirmative misrepresentations regarding immigration consequences or purported to have such expertise.

Furthermore, prejudice was much more apparent in *Kwan* than in our case. Kwan agreed to a sentence of one year and one day. Had he negotiated a sentence only two days lighter, there would have been no aggravated felony since the sentence would have been lower than the one-year cutoff. Thus, our court of appeals found there to be a reasonable probability that defense counsel's affirmative misrepresentations regarding immigration had been prejudicial.

Here, in contrast, we are concerned with the difference between $30,000 and $10,000. That is, Zhu would have had to slash his restitution by a vast percentage to escape the aggravated-felony threshold. This order finds that there is no reasonable probability that Zhu and his counsel could have held out for a four-figure restitution amount when the actual loss was much greater. Zhu and his counsel cooperated their way to a sweet deal of probation and they were wise to snap it up.

The government also argues that Zhu's petition should be denied based on the doctrine of laches and because Zhu has not shown that valid reasons existed for not attacking the conviction earlier. Had he filed in 2013 when the removal proceedings commenced, for example, we could still have had the benefit of a transcript of the plea colloquy. Inasmuch as this order finds that Zhu has not demonstrated that defense counsel committed an error of the most fundamental character, it need not address those arguments.

**CONCLUSION**

For the reasons stated above, Zhu's petition for a writ of error coram nobis is **DENIED**.

**IT IS SO ORDERED.**

Dated: February 24, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

7